UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MAINE HELICOPTERS, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 08-131-P-H |
| | ) | |
| LANCE AVIATION, INC., | ) | |
| | ) | |
| Defendant | ) | |

DECISION AND ORDER ON
MOTION TO DISMISS COMPLAINT

This lawsuit arises out of a Maine corporation's purchase of a helicopter from a Florida corporation. The Maine plaintiff has asserted contract claims (breach of contract; express and implied warranty), and tort claims (fraudulent and negligent misrepresentation; general negligence). The Florida defendant has moved to dismiss for lack of personal jurisdiction.[1] I **Deny** the motion to dismiss.

The Florida corporation, Lance Aviation, Inc., has no ongoing presence in Maine. It advertised the helicopter for sale in a national trade publication, Trade-A-Plane, a publication that is sold in Maine. Farris Aff. ¶ 3(d) (Docket Item 6-2); Vorce Aff. ¶ 11 (Docket Item 3-2).[2] The Maine corporation, Maine Helicopters,

---

[1] The plaintiff agrees that there is no general jurisdiction. Pl.'s Objection to Def.'s Mot. to Dismiss ("Pl.'s Objection") 7 n.3 (Docket Item 6). I analyze the case, therefore, solely under the doctrine of specific jurisdiction.

[2] There is some confusion over the title of the publication. Gregory Farris, the President of Maine Helicopters, Inc., says he learned of the helicopter "through a national publication called "Trader Plane" . . . ." Farris Aff. ¶ 3(d). Michael Vorce, the General Manager of Lance Aviation, Inc., says Lance Aviation advertises "in national publications such as *Trade-A-Plane* . . . ." Vorce Aff. ¶ 11. Despite this variation, they appear to be referring to the same publication, Trade-A-Plane. <u>See</u>
*(continued on next page)*

Inc., owns and operates helicopters providing services to agricultural, forestry, and government clients within Maine. Pl.'s Compl. ¶ 3 (Docket Item 1-3). It saw the advertisement and placed a phone call to Lance Aviation in Florida to inquire about purchasing the helicopter. Lance Aviation made three return phone calls to Maine Helicopters, Farris Aff. ¶ 3(f); Vorce Aff. ¶ 13,[3] and sent three faxes (an aircraft component sheet, an offer to sell, and a proposed contract) to Maine Helicopters. Farris Aff. ¶¶ 3(h), (k), (l). Maine Helicopters informed Lance Aviation that it planned to use the helicopter within Maine. Id. ¶ 3(g). Thereafter, Maine Helicopters sent its employees to Florida. In Florida, Maine Helicopter employees executed the contract, paid for the helicopter, took possession of it and its maintenance records and logs, then flew it back to Maine. Id. ¶ 3(m); Vorce Aff. ¶¶ 14-17.[4]

Now Maine Helicopters asserts that Lance Aviation made false statements of material facts in the maintenance records, log books, and other written records that Maine Helicopters brought back from Florida (Pl.'s Compl. ¶¶ 25, 34); that Lance Aviation made false statements about the helicopter's safety for flight (Id.

---

www.trade-a-plane.com.
[3] Farris's affidavit for Maine Helicopters says that "Lance Aviation made numerous telephone calls . . . to Maine Helicopter's [sic] place of business in Whitefield, Maine . . . [,]" Farris Aff. ¶ 3(f), but "numerous" does not contradict "three," the number of calls that Lance Aviation estimates it made to Maine. Vorce Aff. ¶ 13.
[4] Farris's affidavit for Maine Helicopters says only that "Maine Helicopters' employees, both Maine residents, transported the Helicopter with its maintenance records from Lakeland, Florida to Whitefield, Maine." Farris Aff. ¶ 3(m). Maine Helicopters does not provide any information about where the contract was executed and how it paid for the helicopter. Vorce's affidavit for Lance Aviation says that the parties "executed the purchase agreement for the helicopter at Lance Aviation's headquarters in Lakeland, Florida" and that "Maine Helicopters paid for the helicopter at Lance Aviation's headquarters in Lakeland, Florida." Vorce Aff. ¶¶ 15-16. See also Def.'s Mot. to Dismiss 6 (Docket Item 3). Because Maine Helicopters does not dispute or contradict these factual assertions, I accept them as true. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).

¶¶ 26, 34); that Lance Aviation was silent about certain components concerning which it had a duty to warn Maine Helicopters (Id. ¶ 28); that Lance Aviation breached its duty to inspect and maintain the helicopter, comply with FAA regulations, and maintain accurate records (Id. ¶¶ 40-42); that Lance Aviation failed to perform properly a fresh 100-hour inspection before Maine Helicopters employees picked up the helicopter in Florida (Id. ¶¶ 6, 50); that Lance Aviation has refused to pay to replace or repair the damaged engine components (Id. ¶ 20); that Lance Aviation made numerous telephone calls and sent facsimiles and emails to Maine after the sale to prevent Maine Helicopters from discovering the helicopter's true condition (Farris Aff. ¶ 3(p)); and that Maine Helicopters has made repairs here in Maine in order to make the helicopter safe for flight (Id. ¶ 3(q)).  According to Maine Helicopters, Lance Aviation's conduct resulted in economic damage and risk of injury.  Maine Helicopters seeks to recover the expenses of helicopter overhaul, loss of helicopter use, and reduced helicopter value (along with attorney fees and punitive damages).

## ANALYSIS

When subject matter jurisdiction is based upon diversity of citizenship, as it is here, a federal court asserts personal jurisdiction in accordance with the law of the forum (here, Maine) and the Fourteenth Amendment's due process clause. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  The federal court becomes "the functional equivalent of a state court sitting in the forum state." Id. (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  Thus, a federal court must examine both state law and the Fourteenth Amendment.

Ticketmaster, 26 F.3d at 204. The Maine Law Court says that its statutory analysis tracks the due process clause ("Maine's jurisdictional reach is coextensive with the due process clause of the United States Constitution," Murphy v. Keenan, 667 A.2d 591, 593 (Me. 1995)), but I believe that it is important for me to examine what the Maine cases actually hold before turning to the federal analysis because if the Maine reading should turn out to be narrower,[5] a plaintiff should not obtain wider personal jurisdiction in a diversity case, merely by bringing its case in federal court.

### MAINE CASE ANALYSIS

The Maine Law Court holds that in the specific jurisdiction analysis, due process "is satisfied when: '(1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice.'" Connelly v. Doucette, 909 A.2d 221, 223 (Me. 2006) (quoting Commerce Bank and Trust Co. v. Dworman, 861 A.2d 662, 666 (Me. 2004)).

The Maine Law Court has applied these principles in a number of relevant cases. The Law Court has *approved* specific personal jurisdiction in Maine courts when (1) a North Carolina hospital, with no ties to Maine, issued and refused to correct a credit report that referred to and affected a Maine resident detrimentally,

---

[5] "[S]tate court decisions as to the reach of a particular [jurisdictional] statute always should be consulted." 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1068 (3d ed. 2002). In The Gentle Wind Project v. Garey, No. 04-103-P-C, 2005 WL 40064, at *10-11 (D. Me. 2005), Magistrate Judge Cohen concluded that the Law Court's 2004 reading in Bickford v. Onslow Mem'l Hosp. Found., 855 A.2d 1150 (Me. 2004), actually was broader than the Fourteenth Amendment permits.

4

Bickford, 855 A.2d at 1156; (2) a Maine buyer pursued an out-of-state seller (Los Angeles and Detroit) to create a contract, the seller responded, and ultimately defaulted on the resulting contract, Elec. Media Int'l v. Pioneer Commc'ns of Am., Inc., 586 A.2d 1256, 1260 (Me. 1991); and (3) a Michigan company contacted a Maine company to ship potatoes to Michigan under the Michigan company's private label, and the Michigan company's president made a number of telephone calls to Maine to develop the private label and to request changes to orders before shipment to Michigan, Interstate Food Processing Corp. v. Pellerito Foods, Inc., 662 A.2d 1189, 1192 (Me. 1993). The Law Court has *denied* specific jurisdiction when (1) a Maine company shipped a spiral staircase to a California purchaser pursuant to telephone and mail contacts between California and Maine, then sought to collect on the sale price in a Maine court, Architectural Woodcraft Co. v. Read, 464 A.2d 210, 213 (Me. 1982); (2) a Maine resident traveled to New Hampshire to buy a boat, brought the boat back to Maine with the seller's knowledge, then sought to recover damages here for the boat's defective title, Murphy, 667 A2d at 595; (3) Maine residents were injured in a New York automobile accident by a vehicle owned by a New York corporation and operated by its employee, Frazier v. BankAmerica Int'l, 593 A.2d 661, 663 (Me. 1991); and (4) a Maine resident, injured in an auto accident in New Hampshire by a Massachusetts resident on his way to Maine, sought to recover damages for the injury in a Maine court, Doucette, 909 A.2d at 224-25.

Applying these cases, I conclude that Maine Helicopters satisfies Maine's first requirement easily. In 2004 in Bickford, the Law Court found a "legitimate

5

[Maine] interest in allowing its residents a forum in which to seek redress when out-of-state creditors refuse to correct erroneous credit reports," because such reports "substantially influence the ability of individuals to obtain financing for purchases that are vital to their lives and livelihoods."  Bickford, 855 A.3d at 1155.[6]  Surely the same interest exists in providing a Maine forum for a Maine-based company that uses helicopters within the borders of Maine when the Florida seller phones, faxes, and emails into Maine to prevent discovery of the helicopter's true condition, and refuses to correct alleged problems with the helicopter that could affect the safety of those using the aircraft, as well as its value and cost of repair.  Although in 1995, the Law Court found no Maine interest in a lawsuit concerning title over a boat purchased in New Hampshire, the Law Court distinguished that case involving "mere [Maine] citizenry" from Maine's interest in "the protection of its industries, the safety of its workers, or the location of witnesses and creditors within its border."  Murphy, 667 A.2d at 594.  These latter factors are present in this case.

    The second requirement—a reasonable anticipation that because of the Florida corporation's contacts with the state, Maine could be the site of litigation—is more challenging.  Driving *toward* Maine (with resulting injury to a Maine resident in a New Hampshire auto accident) is insufficient, even though the defendant had previously visited Maine more than once.  Doucette, 909 A.2d at 225.  Buying a staircase *from* a Maine seller is insufficient, even though the

---

[6] See also  Doucette, 909 A.2d at 224 (Even though an accident occurs outside of Maine, damages in Maine—in the sense of injury effects here, medical treatment here, and medical witnesses and records here—are sufficient to satisfy the first (but not the second) element).

transaction was preceded by phone and mail exchanges with the Maine seller. Architectural Woodcraft Co., 464 A.2d at 213. Issuing a warranty in connection with the New Hampshire sale of a boat to a known Maine resident does not establish the kind of continuing contractual obligation that meets the requirement. Murphy, 667 A.2d at 595. But knowing that one's out-of-state conduct (refusing to take corrective action on an inaccurate credit report) is having a detrimental impact in Maine is enough, Bickford, 855 A.2d at 1156. So is entering into a contract with a Maine resident to ship produce out-of-state under a private label, Interstate Food Processing Corp., 662 A.2d at 1192, or engaging in discussions and negotiations over five months, selling and delivering products *to* Maine, with assurances of performance and knowledge of Maine-based reliance, and offering to sell more. Elec. Media Int'l, 586 A.2d at 1260.

So where does this case fit within those precedents? Here, Florida is where the helicopter was located, where its maintenance records and logs were kept, where any failures of maintenance and inspection occurred, where the contract was signed, where the purchase money was paid, and where the Maine corporation took possession of the helicopter and records, by sending two employees there to do so. The Florida corporation advertised its helicopter for sale in a national publication, and after seeing the advertisement in the national publication, it was the Maine corporation that first reached out to Florida to express its interest in purchasing the helicopter. But the Florida corporation then pursued the Maine-placed call, by sending several phone calls and faxes back to Maine. Despite the predominance of contacts in Florida, the Florida corporation

7

knew that Maine was the destination for the helicopter if it consummated the sale. Thus, it knew that any safety or mechanical problems with the helicopter would occur in Maine and affect Maine residents. Then it allegedly reached into Maine by phone, fax, and email to try to prevent discovery of the helicopter's true condition and refused to pay to correct the engine problems. Cf. Bickford, 855 A.2d at 1156 (Once the defendant learned that its conduct was injuring a Maine resident, its failure to remedy the injurious conduct put it on notice that it could be "required to respond to litigation in Maine courts . . . .") This case does not involve five months of negotiations (Electronic Media Int'l), nor a private label with ongoing contacts to alter orders to be shipped from Maine (Interstate Food Processing Corp.), but it certainly involves as much in the way of contacts as the North Carolina hospital credit report case (Bickford). I conclude that it satisfies the second Maine factor. It is more than the mere warranty of the New Hampshire boat sale (Murphy).

The third prong—fair play and substantial justice—does not change the outcome. Under the Maine cases, when a plaintiff satisfies the first two conditions, "the burden then shifts to the defendant to prove the negative of the third condition." Dworman, 861 A.2d at 666 (citing Bickford, 855 A.2d at 1155). Lance Aviation cannot do so. The factors here are "the nature and purpose of a defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties." Id. at 667 (quoting Labbe v. Nissen Corp., 404 A.2d 564, 570 (Me. 1979)). In reverse order,

convenience and fairness to the parties are evenly divided between the states. The helicopter is here, as are the records. Each corporation's employees are located in their respective home states. Both Florida and Maine have interests in the litigation, Maine because the injury was here, Florida because the alleged misconduct was there. The number of contacts is not great, but the contacts are significant, specifically related to the claims, and intentional, voluntary, and economically beneficial to the Florida corporation, which had knowledge that the helicopter would be operating in Maine where its safety and performance issues would be felt.

I conclude, therefore, that the Maine Law Court would find personal jurisdiction in Maine courts.

### FEDERAL ANALYSIS

The Fourteenth Amendment's due process requirement for a case like this is that the Maine-based plaintiff, Maine Helicopters, must satisfy a three-part test, showing that: (1) its claims against Lance Aviation are directly related to Lance Aviation's contacts to Maine; (2) Lance Aviation's Maine contacts "constitute purposeful availment of the benefits and protections afforded by [Maine's] laws[;]" and (3) jurisdiction in Maine is reasonable under the First Circuit's "gestalt" factors. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d, 284, 288 (1st Cir. 1999).

On the first prong, all of Maine Helicopters's claims, whether denominated contract or tort, arise out of the helicopter's sale, a transaction directly related to

9

Lance Aviation's contacts to Maine. See Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 10-11 (1st Cir. 2002).

The second prong is more difficult: did Lance Aviation purposefully avail itself of Maine laws' benefits and protections? Certainly the contract claim (actual or express or implied warranty) is not enough, for Burger King v. Rudzewicz teaches that a contract with an out-of-state party *alone* cannot automatically establish sufficient minimum contacts to sustain jurisdiction. 471 U.S. 462, 478 (1985). Instead, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Id. at 479. The "cornerstones" of purposeful availment are "voluntariness and foreseeability." Sawtelle, 70 F.3d at 1391. "[T]here must be some voluntary action that [the out-of-state defendant] has taken that should have put it fairly on notice that it might one day be called to defend itself in a [Maine] court." Jet Wine & Spirits, Inc., 298 F.3d at 11. Here, Lance Aviation's contacts with Maine were entirely voluntary, not random or fortuitous or those of a third party. See Nowak v. Tak How Investments, LTD, 94 F.3d 708, 716 (1st Cir. 1996) ("not based on the unilateral actions of another party or a third person"). And after Maine Helicopters's initial inquiry, Lance Aviation knew that it was soliciting a purchase from a Maine-based corporation that planned to use the helicopter in Maine. Nevertheless, Lance Aviation continued the process with several phone and fax transmissions into Maine. Given the nature of helicopters as aircraft, safety and performance concerns for

the helicopter's use in Maine should have been obvious to the Florida corporation, as well as the resulting likelihood that it might be held accountable in Maine. See Northern Laminates Sales, Inc., v. Davis, 403 F.3d 14, 25-26 (1st Cir. 2005) (finding purposeful availment where an out-of-state defendant invited the plaintiff to meet with him (outside the forum state) and at the meeting, "knowing full well that his statements would induce [the plaintiff's] reliance, made misrepresentations in the face of the knowledge that his statements would likely cause financial injury to [the plaintiff] in [the forum state]"). Although the issue is close, I conclude that the second prong is satisfied.[7]

The third prong, what the First Circuit calls the five gestalt factors, does not change the outcome. Here, (1) it is a burden for the Florida defendant to appear, given that it has no relationships with or presence in Maine; (2) Maine has a modest interest in adjudicating the dispute—there have been no personal injuries here (although the complaint says that the defendant's conduct created that risk), but there are economic consequences to the Maine corporation; (3) the Maine plaintiff's interest calls for a Maine forum because it is cheaper and more accessible to the plaintiff; (4) the judicial system's interest in the most effective resolution of the controversy does not argue for either forum; (5) the common interests of all sovereigns in promoting substantive social policies favors Florida

---

[7] For the federal analysis, I do not consider the post-sale contacts to which Maine Helicopters refers ("numerous telephone calls and . . . facsimiles and emails to Maine Helicopter's [sic] place of business in Whitefield, Maine after the sale as part of its efforts to prevent Maine Helicopters from discovering the true condition of the Helicopter"), Farris Aff. ¶ 3(p), because they do not appear to be part of Maine Helicopters's cause of action in its complaint. See Harlow v. Children's Hosp., 432 F.3d 50, 61-62 (1st Cir. 2005).

11

marginally, which has an interest in regulating the conduct of corporations located there, while Maine has an interest in compensating its residents.

Therefore, I reach the same conclusion under the federal case analysis of the Fourteenth Amendment as under the Maine Law Court's caselaw.

For those reasons, I **DENY** the defendant's motion to dismiss for lack of personal jurisdiction.

**SO ORDERED.**

**DATED THIS 30TH DAY OF JUNE, 2008**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**